

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1057-13

**MICHAEL ANTHONY GRADO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### OLDHAM COUNTY

KEASLER, J., delivered the opinion of the Court in which MEYERS, PRICE, HERVEY, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a dissenting opinion. WOMACK and JOHNSON, JJ., concurred.

### O P I N I O N

Michael Grado's community supervision was revoked, and the judge sentenced Grado to ten years' confinement, believing that it was the statutory minimum for Grado's offense when in fact it was five. Grado did not object. Is the right to be sentenced by a judge who considers the entire range of punishment subject to procedural default? Concluding that it is a waiver-only right, we hold that it is not.

## Background

After Grado pleaded guilty to possession of 400 grams or more of amphetamine, the judge sentenced him to ten years' confinement, but suspended the punishment and imposed community supervision for a ten-year period and assessed a $10,000 fine. Grado later pleaded true to the violations the State alleged in its motion to revoke his community supervision. There was no plea bargain between the parties on punishment after revocation. Before the admission of evidence, findings on the violations, and sentencing, the parties informed the judge of their belief on the correct punishment range applicable to Grado's conviction:

> [State]: Your Honor, before I present any evidence, I'd just like to remind the Court, and you're probably aware of this already, but I just discovered it this morning. I think the minimum punishment in this case is ten years, because it's over 400 grams. So I think the Court's options here are to either leave [Grado] on probation, or if you choose to revoke him, the ten years is the minimum.
>
> And I made a mistake about that earlier in my offer to [defense counsel], and I realized this morning my mistake, and so I wanted to bring that to the Court's attention.
>
> [Defense counsel]: Your Honor, addressing that issue, that is correct. I have had an opportunity to explain that to my client and, in fact, to his family, as well. And with that understanding, we are still proceeding with—with the understanding that is the case.
>
> The Court: All right.
>
> [State]: Your Honor—
>
> The Court: This was called a first degree felony, but it's one of those that's—the punishment range is up a little above. Do you understand that, Mr. Grado? The minimum here, punishment, is ten years. Do you

understand that?

[Grado]: The minimum?

The Court: Yes. And that would also be the maximum that you could get. I could give you—you know, what could happen here is, I can either revoke your probation or leave you on probation. If I revoke your probation, it's—the minimum is ten, or the maximum—and the maximum is ten, so it's a ten-year sentence. Do you understand that?

[Grado]: Yes, Your Honor.

The Court: All right. Do you still wish to plead true?

[Grado]: At the mercy of the Court, yes.

At the close of evidence, the judge found the violations true and sentenced Grado to ten years' confinement. Grado did not object. Most likely influenced by the parties' unanimous, but mistaken belief of the applicable law, the judge incorrectly believed that the minimum punishment of Grado's conviction was ten years' confinement. Both parties concede the error. As noted by the court of appeals, the trial court's judgment (which the court of appeals reformed) reflects a conviction under Health and Safety Code § 481.115. But that section defines the degree of felony and punishment range for the possession of Penalty Group 1 substances and establishes a minimum period of confinement of ten years.[1] Grado was convicted of possessing amphetamines, a Penalty Group 2 substance,[2] the

---

[1] TEX. HEALTH & SAFETY CODE § 481.115(a).

[2] *Id.* § 481.103.

punishment range of which is controlled by § 481.116(a).[3] The possession of 400 grams or more of a Penalty Group 2 substance carries a punishment range of lifetime confinement "or for a term of not more than 99 years or less than 5 years."[4]

In two points of error on appeal, Grado challenged his sentence and conviction asserting that (1) the judge arbitrarily refused to consider the correct range of punishment, and (2) he was constructively denied effective assistance of counsel when counsel agreed with the State's representation of the minimum punishment. Over the State's argument to the contrary, the court of appeals held that, despite a lack of an objection, Grado's first claim could be raised for the first time on appeal.[5] The court held that "the right to be sentenced under the correct statute by a sentencing authority who has meaningfully considered the appropriate range of punishment" falls under *Marin v. State*'s[6] second category; a right that "must be implemented by the [legal] system unless expressly waived" and therefore does not require a contemporaneous objection.[7] The court found that the judge's error was harmful under Rule of Appellate Procedure 44.2(b) and did not address Grado's ineffective-

---

[3] *Id.* § 481.116(a).

[4] *Id.* § 481.116(e).

[5] *Grado v. State*, No. 07-11-00468-CR, 2013 WL 3355743, *4 (Tex. App.—Amarillo June 28, 2013).

[6] 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

[7] *Grado*, 2013 WL 3355743 at *4.

assistance-of-counsel claim.[8] We granted the State Prosecuting Attorney's sole ground in

its petition for discretionary review seeking review of the court of appeals' *Marin* analysis.

### Preservation of Error

The general requirement that a contemporaneous objection must be made to preserve

error for appeal is firmly established in Rule of Appellate Procedure 33.1.[9] But the rule is

not absolute. In *Marin*, we held that the general preservation requirement's application turns

on the nature of the right allegedly infringed. We separated defendants' rights into three

categories:

- The first category of rights are those that are "widely considered so fundamental to the proper functioning of our adjudicatory process . . . that they cannot be forfeited . . . by inaction alone."[10] These are considered "absolute rights."[11]

- The second category of rights is comprised of rights that are "not forfeitable"—they cannot be surrendered by mere inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made.[12] The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.[13]

---

[8] *Id.* at *4–5.

[9] TEX. R. APP. P. 33.1(a) (requiring that, as a prerequisite to presenting a complaint on appeal, the record show a complaint was made to the trial court alleging specific grounds for the objection that comply with the Rules of Evidence and that the trial court ruled, or refused to rule on, the objection.).

[10] *Marin*, 851 S.W.2d at 278.

[11] *Id.* at 279.

[12] *Id.* at 279–80.

[13] *Id.*

- Finally, the third category of rights are "forfeitable" and must be requested by the litigant.[14] Many rights of the criminal defendant, including some constitutional rights, are in this category and can be forfeited by inaction.[15]

Rule 33.1's preservation requirements do not apply to rights falling within the first two categories.[16] Barring these two narrow exceptions, all errors—even constitutional errors—may be forfeited on appeal if an appellant failed to object at trial.[17]

The court of appeals found that the right implicated here was the right to be sentenced by a sentencing authority who considered the appropriate range of punishment.[18] Holding that Grado was denied this right, the court of appeals held that Grado was deprived of a fair and impartial proceeding.[19] And under the unique circumstances of Grado's case, the right sought to be vindicated for the first time on appeal was a *Marin* category-two right.[20]

## *Marin* Analysis

A court's arbitrary refusal to consider the entire range of punishment constitutes a

---

[14] *Id.*

[15] *Id.* at 279.

[16] *See id.* at 279–80.

[17] *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

[18] *Grado*, 2013 WL 3355743, at *4.

[19] *Id.*

[20] *Id.*

denial of due process.[21]  And despite a judge's wide discretion in determining the proper punishment in a revocation hearing, due process requires the right to a hearing before a neutral and detached hearing body.[22]

We can easily conclude that the right to be punished after consideration of the full range of punishment falls outside of *Marin*'s first category.  This right is not an absolute right because it is waivable or forfeitable by the parties.  We need to look no further than the negotiated plea bargain to prove this truth.  In a negotiated plea bargain that contemplates a particular offense of conviction and punishment to be imposed, a defendant is expressly giving up a whole host of rights, including the right to be sentenced by a judge considering the entire range of punishment, and even perhaps the right to be sentenced under the "correct" statute.[23]  The limitation here, of course, is that the resulting sentence must be within the range of punishment provided by statute.  In other words, the sentence may not be illegal.[24]  Grado's sentence was not; it fell within § 481.116's range of lifetime confinement

---

[21]  *Ex parte Brown*, 158 S.W.3d 449, 454 (Tex. Crim. App. 2005); *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), overruled on other grounds by, *De Leon v. Aguilar*, 127 S.W.3d 1 (Tex. Crim. App. 2004).

[22]  *Id.*; *see Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

[23]  *See Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004) ("Even when the plea is entered without waiver of trial by jury, the constitutional rights that are affected may include the right to have the State prove guilt beyond a reasonable doubt, and the right to confront and cross examine witnesses against the defendant.").

[24]  *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003); *Ex parte Pena*, 71 S.W.3d 336, 336–37 & n.1 (Tex. Crim. App. 2002).

or for a term of not more than 99 years or less than five years and a fine of up to $50,000.

We do not find this case to be squarely controlled by our previous opinions concerning the lack of a judge's partiality where the judge prejudged evidence or willfully imposed a predetermined sentence.[25] Indeed, Grado himself concedes below that the sentencing judge in this case was not biased *per se*, but rather mistaken as to the proper range of punishment. We agree with this assessment. By all accounts, it appears the judge attempted to conscientiously follow the law and consider the range of punishment for Grado's offense, including continuing his community-supervision term. However, the judge's mistaken belief that the particular possession offense carried a minimum of ten-year's confinement, together with Grado's underlying sentence of ten-years' confinement, resulted in the combined mistaken belief that upon revocation Grado faced a determinate sentence of ten years' confinement. We find the nature of Grado's sentencing does not equate to the intentional and deliberate partiality that infected those judicial proceedings we previously found intolerable.

For the same reasons, we are unwilling to analogize the judge in this case to an impartial juror in a trial's sentencing phase as the State suggests. It is true that we have held that a challenge for cause to a juror's impaneling based on one of the reasons listed in Code of Criminal Procedure Article 35.16, is forfeited if not asserted at trial.[26] But as stated above,

---

[25] *See, e.g., Ex parte Brown*, 158 S.W.3d 449 (Tex. Crim. App. 2005); *Blue v. State*, 41 S.W.3d 129, 138–39 (Tex. Crim. App. 2000) (Keasler, J., concurring).

[26] *Webb v. State*, 232 S.W.3d 109, 112 & n.1 (Tex. Crim. App. 2007). *See State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008) (addressing an ineffective-assistance-of-counsel claim and stating "the right to trial by impartial jury, like any other

the circumstances surrounding Grado's sentencing does not equate to "bias or prejudice against any law applicable to the case upon which the defense is entitled to rely[.]"[27] The analogy is unpersuasive because even if we were to treat the judge as a juror for error preservation purposes, evidence of bias or prejudice against the range of punishment is insufficient on these facts. The decidedly harder issue is categorizing this right among *Marin*'s second and third categories.

The nature of the right Grado seeks to vindicate leads us to conclude that it is one that is a significant feature of our judicial system and should be classified as a *Marin* category-two right. In the absence of a defendant's effective waiver, a judge has an independent duty both to identify the correct statute under which a defendant is to be sentenced and the range of punishment it carries and to consider the entire range of punishment in sentencing a defendant irrespective of a defendant's request that he do so. And as we have made clear, a defendant "need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them."[28] The unfettered right to be sentenced by a sentencing judge who properly considers the entire range of punishment is a substantive right necessary to effectuate the proper functioning of our criminal justice system. The Legislature has defined, by the offense's degree and possible punishment assigned to it, the punishment

right, is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy.").

[27] *See* TEX. CODE CRIM. PROC. art. 35.16(c)(2).

[28] *See Marin*, 851 S.W.2d at 280.

all convicted offenders are exposed to for certain offenses. Failing to consider all available punishment carries an unacceptable risk of undermining the principle that the judicial system applies equally the range of punishment to all offenders. A contrary conclusion has the potential of shaking the public's perception of the fairness of our judicial system and breeding suspicion of the fairness and accuracy of judicial proceedings. The nature of this right is too significant to the judicial system to conclude that it is extinguished by mere inaction.

Furthermore, the right at issue here is fundamentally different than those that we have found forfeitable, which by and large, have been evidentiary or procedurally based.[29] In those instances, we have found that in order to enforce certain evidentiary or procedural rules it makes sense to require either an affirmative request that they apply or, when a judge has held that they do not, an objection as a prerequisite to appeal the lower court's action. But the right involved here speaks to a broader concern—the integrity of judicial sentencing proceedings.

We also find distinguishable the cases the State relies upon in asserting that this right is forfeitable. The State first refers us to a passage in our *Aldrich v. State* opinion: "Avoidance of mistakes is neither an absolute, systemic requirement, nor a right that requires

---

[29] *See, e.g.*, *Johnson v. State*, 357 S.W.3d 653, 658 n.3 (Tex. Crim. App. 2012) (Fifth Amendment privilege against self-incrimination); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (confrontation and compulsory process); *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998) (statute of limitations defense); *Cockrell v. State*, 933 S.W.2d 73,89 (Tex. Crim. App. 1996) (improper jury argument).

an affirmative waiver."[30]  *Aldrich* involved the sentencing judge's misapprehension of the case's procedural posture.[31]  The sentencing judge mistakenly believed that the judge who took Aldrich's guilty plea and found the evidence sufficient to find her guilty in fact expressly found her guilty.  Aldrich did not object to the sentencing judge's mistake and on appeal claimed that the judge abused his discretion by failing to allow her to withdraw her guilty plea.  In holding that Aldrich could not bring this claim for the first time on appeal, we stated that "a court's mistaken assumption that what usually happens in a case had happened in this case, is not an event that may be complained of for the first time on appeal" in light of failing to direct the judge's attention to that fact.[32]  *Aldrich*'s holding, at least partially, rested on the rationale that Aldrich stood idly by while the sentencing judge operated from the faulty assumption that a guilty finding was made.[33]  However, what removes Grado's case from *Aldrich*'s auspices is the different natures of the rights at play in the two cases.  Grado's right to be sentenced after consideration of the entire punishment range is qualitatively more substantive than Aldrich's procedural right to a formal guilty finding (even though there was a finding that the evidence was sufficient to find Aldrich guilty) before sentencing in a guilty-plea context.

---

[30]  104 S.W.3d 890, 895 (Tex. Crim. App. 2003).

[31]  *Id.*

[32]  *Id.*

[33]  *Id.* at 896.

The State also relies upon *Hull v. State*.[34] Hull was placed on "zero-tolerance" community supervision.[35] Shortly after, the State filed a motion to revoke alleging two probation violations, and Hull pleaded "true" to one violation and "not true" to the other. The judge found that Hull violated his probation and sentenced him to a term of imprisonment. On appeal, Hull claimed that his revocation on the basis of the zero-tolerance policy deprived him of due process. The court of appeals held that Hull could raise this claim on appeal despite his lack of objection. Relying on Rule of Appellate Procedure 33.1 and without mention of *Marin*, this Court concluded that Hull procedurally defaulted his claim by failing to object to the zero-tolerance policy at the imposition of his probation or the revocation of his probation.[36] In so holding, we pointed to Hull's apparent understanding that he was subject to the judge's zero-tolerance policy at the time probation was imposed, and Hull had an opportunity to object, but did not.[37]

We find *Hull* to be of limited value in resolving Grado's case because *Hull* applied the preservation-of-error requirement as it related to conditions of probation, which we have acknowledged to be slightly different. In *Speth v. State*, we recognized that the granting of community supervision was analogous to a contract between a defendant and the trial court,

---

[34] 67 S.W.3d 215 (Tex. Crim. App. 2002).

[35] *Id.* at 216.

[36] *Id.* at 217.

[37] *Id.* at 218.

and "by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract."[38]  Only recently have we definitively determined that *Speth*'s broad rule does not apply when the contested condition violates a category-one *Marin* right.[39]  Consistent with *Speth*'s broad rule of error preservation, *Hull* summarily concluded that without a contemporaneous objection the alleged error was forfeited.  At the time *Hull* was decided it was unclear to what extent a *Marin* analysis was necessary, if at all.  For these reasons we choose not to extend *Hull* to the present case.

## Conclusion

Having concluded that the right to be sentenced after consideration of the entire applicable range of punishment is a category-two *Marin* right, we hold that Grado's complaint was not procedurally defaulted.  And because the record does not reveal an effective waiver of the right at issue, we further hold that the court of appeals properly entertained the merits of Grado's complaint.[40]  We affirm the court of appeals' judgment.

---

[38]  6 S.W.3d 530, 534–35 (Tex. Crim. App. 1999).

[39]  *Gutierrez v. State*, 380 S.W.3d 167, 175 (Tex. Crim. App. 2012) ("We are not inclined to read *Speth* so categorically as to hold that a defendant may not complain for the first time on appeal of a condition of probation which violates an absolute prohibition as envisioned by *Marin*.").

[40]  *See Marin*, 851 S.W.2d at 280 (stating "a litigant is never deemed to [give up waiver-only rights] unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record.").

DELIVERED: October 15, 2014

PUBLISH